MARY B. IRWIN et al. *v.* A. J. LEWIS.

1. HOMESTEAD EXEMPTION — HOW OBTAINED. — If a debtor occupies property as a residence, and is the head of a family and a householder, such property, to the quantity and value named in the statute, is exempt from "seizure and sale." The law attaches to the ownership of the debtor that immunity. Property liable to levy and sale at the date of the rendition of a judgment can be impressed with the rights of a homestead before either a levy or sale. And it is immaterial how short a time before the sale this is done. Trotter v. Dobbs et ux., 38 Miss., 198.

2. EQUITABLE RELIEF — INJUNCTION. — A chancery court has the power to intervene and prevent the sale of real estate under legal process, upon the allegation that such a proceeding would culminate in casting a cloud upon complainant's title. The levy upon the property is one mode of embarrassing the title.

3. SAME — SAME — WHEN EXERCISED. — The test of the right to equitable interposition is not merely that there is a remedy at law, but that remedy must be adequate, as practical and efficient to the ends of justice, as the remedy in equity.

4. SAME — SAME — CASE IN JUDGMENT. — When property claimed as a homestead is threatened with sale under a legal process, a bill in equity, to restrain the sale thereof, is the proper remedy.

APPEAL from the Chancery Court of Claiborne County.    Hon. JAMES M. ELLIS, Chancellor.

In June, 1868, appellants recovered separate judgments against appellee.    On the 27th March, 1871, *venditioni exponas* was issued upon each of said judgments commanding the sheriff to sell lots one and two, in the town of Port Gibson, the same having previously been levied upon as the property of appellee under writs of *fi. fa.*    The sheriff advertised the lots for sale.

Thereupon appellee presented his bill for an injunction of the sale, alleging that at the rendition of the judgments, he was a

married man, a householder and head of a family, residing and domiciled in the town of Port Gibson, and was such at the time he purchased and moved on the property levied on. That he has continued to occupy the property as his home and place of residence ever since he purchased it. That in the latter part of the year 1869, his wife died, but that he and his servants have ever since continued to reside and keep house on said premises. That he again married in April, 1871, and has ever since occupied the premises with his wife and family as his home and residence. That the property is situated in an incorporated town, and is not worth over $2,000, and is exempt from seizure and sale under execution. That the premises are advertised for sale by the sheriff, and that such sale will cast a cloud upon his title and homestead, etc., and prays for an injunction to restrain the sale thereof, etc.

To this bill, appellants filed an answer, setting out that appellee was not a married man from 1869 to 1871. That he had no children ; was not the head of a family, and was not entitled to any homestead under the law. That the marriage of appellee in 1871 was fraudulently consummated to defeat the sale of the property. That complainant has a full and adequate remedy at law by motion to set aside and vacate the levies, etc.

A motion to dissolve the injunction on the bill and answer was made, which motion was overruled and a decree rendered perpetually injoining the sale of the premises in controversy. From this decree an appeal was taken, and the following causes of error assigned :

1. That the court erred in granting the injunction in the first instance.

2. That the court erred in overruling the motion of defendant-appellants for a dissolution of the injunction.

3. That the court erred in allowing Mrs. Mary H. Lewis, wife of complainant, to be made a party defendant to said cause.

4. That the court erred in not dismissing complainant's bill with costs and damages.

5. That the court erred in decreeing that the complainant was entitled to the relief prayed for by him, in decreeing said property exempt from sale under said judgments and executions, in releasing, cancelling and annulling said levies, in making said injunction perpetual and in taxing defendants-appellants with the costs of said cause.

*Berry & Drake*, for appellants, contended:

1. That as exemptions are a matter of grace and favor to debtors, they are within the discretion of the legislature to regulate, abolish, etc., at pleasure. That § 2145 of Code of 1871 abolished all exemptions for debts contracted prior to Sept. 1, 1870, thereby letting these judgment liens vest in and attach to the property in controversy; hence the appellee is without remedy at law or in equity. That having once vested, no action of the legislature or of the appellee could divest them. Freeman's Ch. R., 584.

2. That appellee had a full and adequate remedy at law, and hence a court of equity had no jurisdiction. Ezelle v. Parker, 41 Miss., 521; 1 Kelly, 7; 3 ib., 435; 1 Morris (N. J.), 461; 5 Geo., 576; 1 Barb., 316; 7 Johns. Ch. R., 315; Coulson v. Harris, 43 Miss., 756; 1 Johns. Ch. R., 49; 3 English, 52; 16 Ohio, 28; 7 B. Monroe, 289; Ammons et al. v. Whitehead et al., 31 Miss., 103; Carr v. Anderson, 24 ib., 188; 8 B. Monroe, 519; Bell et al. v. Tombigbee R. R. Co., 4 S. & M., 573; Planters' Bank v. Neeley et al., ib., 113; 6 How., 352; 2 S. & M., 339; 12 ib., 533.

3. That the court erred in allowing appellee to amend his bill, after motion to dissolve on bill and answer had been heard and overruled, without exceptions to the answer as insufficient and without affidavit that such amendments had become necessary by the disclosures made by the answer, and that he was ignorant of such facts, etc., until the coming in of the answer. 1 Eden. on Inj., 148, and notes 1 and 2.

4. That as it is only sureties, who pay the debt of their principal, as a matter of right are subrogated, the court erred to the

prejudice of appellants in allowing the wife of appellee to be made a party to the suit. 2 Paige, 117 ; 8 Leigh., 588 ; 5 S. & M., 791.

*Thrasher & Sillers,* for appellee, insisted:

1. That a bill in equity was the proper remedy to prevent or remove clouds from title to real estate. Coulson v. Harris, 43 Miss., 752 ; Ezelle v. Parker, 41 ib., 526 ; 2 Story's Eq. Jur., § 851 ; South. Law Review for Jan., 1874, p. 126 ; 60 Maine, 186 ; McDonald v. Murphree, 45 Miss., 711 ; Dows v. City of Chicago, 11 Wall., 108.

2. That appellee had no adequate remedy at law ; that nothing could compensate one for a cloud being placed upon their title.

3. That appellee had fulfilled all the requirements of the law to entitle him to his homastead exemption. Trotter v. Dobbs et ux., 38 Miss., 198 ; Moseley v. Anderson, 40 ib., 54 ; Stephenson v. Osborne, 41 ib., 127.


SIMRALL, J., delivered the opinion of the court.

Two points have been made and argued in this court, in opposition to the decree of the chancery court.

First. That Lewis, the appellee, did not have a homestead exemption in the premises levied upon by the judgment creditors, the appellants.

Second. That a court of chancery had no jurisdiction, by its restraining process, to prevent the sale of the property under the executions, the remedy being adequate at law.

The case, as made by the pleadings and proofs at the final hearing, was that Lewis, with his wife and servants, was occupying the house and lot, in the suburbs of Port Gibson, estimated to be worth from twelve to twenty hundred dollars.

The argument made in behalf of the judgment creditors is, that at the date of the rendition of the judgments, and for some time after, there were liens upon the property, because Lewis was not, within the meaning of the statute, a householder and head of a

family, and his subsequent marriage could not have the effect of divesting the liens.

Two things are necessary in order to consummate the right to the homestead. First, occupancy as a place of residence; second, by the head of a family and householder. If the debtor fulfills these conditions, then the premises, to the extent of quantity and value named in the statute, is exempt from " seizure " and "sale." The law attaches to the ownership of the debtor that immunity. The privilege is both against seizure and sale. Although, therefore, the property might have been liable to levy and sale at the date of rendition of judgment, yet, if before either a levy or sale, the property is impressed 'with the rights of a ·homestead, the creditor can proceed no further. The very point was adjudged in Trotter v. Dobbs and wife, 38 Miss., 198. Dobbs had occupied the land for twelve months before the levy and sale; but on the morning of the day of sale, and a few hours in advance of it, he married and took his wife home. It was held, that the moment he had married he became the head of a family, and, being an occupant, the land became exempt for his benefit, and the support of his family. The doctrine is distinctly announced that, if the debtor occupies as housekeeper and head of a family before the sale, however short the time, he is entitled to the privilege conferred by the statute.

Lewis has completely fulfilled these requisites, and the privilege of exemption has been impressed upon the land as a homestead. Phipps v. Lessley, 49 Miss., 798.

We have not met with a case disputing or denying to the chancery court the power to intervene and prevent the sale of real estate, on legal process; on the allegation that such a proceeding would culminate in casting a cloud upon the title of the complainant. Numerous cases have been decided in this court, without challenging the jurisdiction, one at this term of Mary A. Shaw v. Valencia Millsaps, et al., (*post*, 380.)

The levy upon the property is one link in the chain of acts, to

bring about such a result. It is the assertion of a claim, upon the property by the judgment creditor, which would embarrass the complainant's title.

In Dows v. City of Chicago, 11 Wallace, 110, the court in considering the various circumstances, in which the enforcement of taxes may be restrained by injunction, mentions the proposed "sale of real estate, which would throw a cloud upon the complainant's title, before the aid of a court of equity can be invoked." It rests upon the principle, that if the tax be illegal or improper, the law could afford no adequate redress; but the chancery court will intervene in the first instance in the protection of the complainant's title. The principle is recognized in McDonald v. Murphree, 45 Miss. 711.

If the real estate is not subject to sale under legal process, no title would pass to the purchaser. Nevertheless, there would be hanging over the complainant's title, the sheriff's deed, the judgment and levy, which in their united effect would constitute a cloud, that might, after the lapse of time, seriously jeopardize the complainant's right. It would not be denied that after the sale the complainant might bring his bill to set aside the sheriff's deed. Within the liberal and beneficent range of equitable power — if the remedy at law would not be full and complete practically — then the chancery relief may be interposed.

The test of the right to equitable interposition is not merely that there is a remedy at law; "but it must be plain and adequate, as practical and efficient to the ends of justice, and its prompt administration as the remedy in equity. Boyce's Ex'rs v. Grundy, 3 Peters, 210; Watson v. Sutherland, 5 Wallace, 78. In this last case, Watson & Co. caused writs of *fieri facias* issued on judgments recovered against Wroth & Fullerton, to be levied on the entire stock of a retail dry goods store, in the possession of Sutherland, who claimed to be exclusive owner. He charged if the sale were made, the injury would be irreparable, and could not be compensated in damages, because he was sole

owner, had bought the goods for the season's business, which were not all paid for; that if his store was closed, a profitable trade would be broken up, and he would become insolvent, etc., etc. On these allegations, it was held a proper case for injunction.

What damages could a court of law award against a sheriff and the judgment creditor who prompted his act, for the levy upon and sale of land? The sheriff does not break the close; he does not intrude upon the occupancy; his deed is ineffectual to pass the title. It can hardly be affirmed that more than nominal damages have been sustained. Yet it might be true, that the existence of his deed would impair seriously the sale value of the property, and might in after years, when evidences have faded, or grown dim, put in jeopardy the complainant's title. Many cases are to be found in our books, of bills brought by judgment creditors to set aside fraudulent conveyances of the debtor, in order that a disincumbered title may be offered to purchasers, and thereby enhance the value of the property.

It would be admitted, if a sale were made under these executions, that Lewis could maintain a bill to vacate the sheriff's deed, as a cloud upon his title. It is giving a liberal and beneficial application of the principle, to interpose in advance of the sale, and disperse the gathering cloud before it has settled upon the complainant's title. To that extent, in administering the preventive justice of a court of equity, has the doctrine been long acted upon in this state. Nor is it peculiar, or special in our jurisprudence. In a very recent case, Gerry v. Stimson, 60 Me., 189, the court said, "the same reason which justifies the court to compel the cancellation of a deed, or the release of a supposed right under it, will authorize the prevention of such fictitious and fraudulent titles coming into existence.

It is better to prevent the creation of a fictitious or fraudulent title, than to compel its cancellation or release after it had been created." In that case the administrator was about to make a sale

of intestate's real estate, the effect of which would have been to embarrass the complainant's right, and was restrained by injunction.

The very question made in this case arose in Pettit v. Shepherd, 5 Paige Ch. Rep., 501. The object of the bill was to enjoin the sheriff's sale. The objection to the jurisdiction was urged that the complainant could not be injured, since the invalidity of the title conveyed by the sheriff's deed could be shown at law. But the chancellor held, that the power to cancel deeds was well established, and if the court can clear off such a cloud, "it would follow as a necessary consequence that it may interpose its aid to prevent such a shade from being cast upon the title, when the defendant evinces a fixed determination to proceed with the sale."

There is no error in the decree, wherefore it is affirmed.